[Cite as *Cleveland v. Interstate Invest. Group*, 194 Ohio App.3d 833, 2011-Ohio-3384.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 95449**

---

## CITY OF CLEVELAND

APPELLEE,

v.

## INTERSTATE INVESTMENT GROUP,

APPELLANT.

---

## JUDGMENT:
## REVERSED AND REMANDED

---

Criminal Appeal from the
Cleveland Municipal Court
Housing Division
Case Nos. 08 CRB 42924, 09 CRB 02474, 09 CRB 04252,
09 CRB 23359, 09 CRB 24969, 09 CRB 29344, 09 CRB 30178,
09 CRB 30563, 09 CRB 37904, 09 CRB 44442

**BEFORE:**    Boyle, P.J., Cooney, J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:**    July 7, 2011

**ATTORNEYS:**

Lillie & Holderman, Richard G. Lillie, and Gretchen A. Holderman, for appellant.

Robert J. Triozzi, Cleveland Director of Law, and Karyn J. Lynn, Assistant Director of Law, for appellee.

MARY J. BOYLE, Presiding Judge.

**{¶ 1}** Defendant-appellant, Interstate Investment Group ("Interstate"), appeals its conviction and sentence in connection with ten separate criminal cases filed in Cleveland Municipal Housing Court, alleging building, housing, and health-code violations. Interstate raises six assignments of error, challenging its purported no-contest plea, the trial court's finding of guilt, and the trial court's imposition of a total fine of $11,948,000. Because we find that the record is devoid of Interstate's ever actually changing its not-guilty plea and entering a no-contest plea, we vacate the conviction and sentence and remand for further proceedings.

Procedural History and Facts

**{¶ 2}** Interstate is a private, for-profit corporation based in Gilbert, South Carolina, that buys and sells real estate. Throughout 2008 and 2009, appellee, the city of Cleveland, cited Interstate for multiple building- and housing-code violations, including issuing condemnation notices, as a result of the deteriorating and hazardous conditions of the properties owned by Interstate. Despite being served with notice of

the code violations, Interstate failed to correct the violations. The city subsequently filed 18 cases — three minor-misdemeanor tickets and 15 multiple-count complaints for failure to correct the violations.

{¶ 3} According to the record, Interstate failed to appear in court after being properly cited and served with summons of the complaints. The trial court ultimately held a contempt hearing on Interstate's repeated failure to appear and entered a finding of contempt, resulting in per diem fines totaling $450,000. On November 16, 2009, Interstate subsequently appeared, through its counsel, and entered not-guilty pleas on all the cases. Following the not-guilty pleas, the court set the matter for a court-supervised pretrial with the parties.

{¶ 4} Through pretrial negotiations, the city recommended that Interstate pay $500 for each of the three minor-misdemeanor cases, and in exchange for a plea of no contest to the other cases, the city would dismiss all duplicate cases and recommend a total of $150,000 in fines but agree to a 90 percent suspension of the fines after Interstate remedied the violations and fully reimbursed the city for the costs it incurred in demolishing the condemned properties.

{¶ 5} The court held a change-of-plea hearing on March 18, 2010. At this hearing, the court allowed Interstate's manager, George Kastanes, to appear in court via video conferencing. Interstate also provided the court with an affidavit from Kastanes, authorizing its attorney, Edward Hayman, to withdraw any previous plea of not guilty

and to enter a plea on Interstate's behalf. At the hearing, the court addressed Kastanes first, stating the following:

{¶ 6} "We have a case here in Cleveland and the authorization is fine, but if there is a change from not guilty to no contest, we have to do what we call 'Wanzo' because it's named after Mary Wanzo, the defendant. And Mr. Hayman, of course, is familiar because he's a long time practitioner here in court, but the only thing missing is that you understand that the corporation, not you personally, but the corporation in the criminal cases that are before us would be entering a plea of no contest, which is not an admission of guilt, but an admission that the violations did exist; and the corporation would be giving up its right to a jury trial; right against self-incrimination; right for compulsory process and right to have the City prove their case beyond a reasonable doubt; and that Mr. Hayman then will work on the case as outlined in your authorization.

{¶ 7} "We'll hear from the prosecutor; hear her recommendation, and it's my intention today not to issue a sentence, but to do a presentence report and work on this with Mr. Hayman and the prosecution in trying to come up with a holistic solution to the issues that are raised. So I just need to — in that the corporation, both corporations Paramount Land Holdings and Interstate know their rights and knowingly and willingly give them up, and have authorized Mr. Hayman to act in their behalf today?"

{¶ 8} After Kastanes answered in the affirmative, the court then proceeded to hear from the prosecutor as to the city's stated recommendation. The city gave a

recommendation consistent with what the parties had discussed in pretrial negotiations. The city also moved to nolle those cases that were duplicates, which the trial court granted and dismissed.

{¶ 9} On March 23, 2010, a judgment entry was journalized, reflecting that on March 18, 2010, Interstate appeared through its counsel and withdrew its plea of not guilty and entered a plea of no contest and that the court then entered a finding of guilt. This judgment entry was not signed by the trial judge. Consequently, on June 18, 2010, the trial court entered another judgment entry and order, journalizing its finding of guilt against Interstate. On this same day, the trial court also issued a detailed sentencing order, imposing the maximum penalty allowed under law for each of the offenses in the ten cases, for a total of $11,948,000.

{¶ 10} Interstate now appeals, raising six assignments of error, which are set forth in the attached appendix.

## No Contest Plea

{¶ 11} In its first assignment of error, Interstate argues that the trial court failed to ever properly take a no-contest plea, and therefore its conviction and sentence cannot stand. We agree.

{¶ 12} Initially, we note that a trial court's obligations under Crim.R. 11 in accepting a plea depend upon the level of offense to which the defendant is pleading. *State v. Watkins*, 99 Ohio St.3d 12, 2003-Ohio-2419, 788 N.E.2d 635, ¶ 25.

{¶ 13} For a petty offense, such as the offenses at issue in this case and defined in Crim.R. 2(D) as "a misdemeanor other than [a] serious offense," the court is instructed that it "may refuse to accept a plea of guilty or no contest, and shall not accept such pleas without first informing the defendant of the effect of the plea of guilty, no contest, and not guilty." Crim.R. 11(E). To satisfy the requirement of informing a defendant of the effect of a plea, a trial court must inform the defendant of the appropriate language under Crim.R. 11(B). *State v. Jones*, 116 Ohio St.3d 211, 2007-Ohio-6093, 877 N.E.2d 677. Thus, "for a no contest plea, a defendant must be informed that the plea of no contest is not an admission of guilt but is an admission of the truth of the facts alleged in the complaint, and that the plea or admission shall not be used against the defendant in any subsequent civil or criminal proceeding." Id. at ¶ 23, citing Traf.R. 10(B)(2) and Crim.R. 11(B)(2). Conversely, the trial court need not inform the defendant of the maximum sentence and the right to a jury trial to satisfy this requirement. Id. at ¶ 22.

{¶ 14} Our review of the record reveals that Interstate never actually entered a plea of no contest at the change-of-plea hearing on March 18, 2010. Indeed, the city concedes that neither Kastanes nor Interstate's attorney ever actually entered a no-contest plea. We find that this omission is fatal to any subsequent finding of guilt, which is also conspicuously missing from the transcript of the proceedings held on March 18.[1]

---

[1] We note that prior to entering a guilty finding, the trial court never discussed any of the circumstances regarding the stated violations in the seven cases involving first-degree misdemeanors, as required under R.C. 2937.07.

Indeed, we find that the applicable plea requirements set forth in Crim.R. 11(E) necessitate that the defendant first communicate a plea of no contest to the court. The failure first to obtain such a plea precludes a trial court from subsequently making a guilty finding and entering a conviction. See *Cleveland v. McCoy*, 8th Dist. No. 90763, 2009-Ohio-2247.

{¶ 15} Accordingly, based on the record before us, we sustain the first assignment of error, vacate the convictions and sentence, and remand for further proceedings. Our disposition of the first assignment of error renders the remaining five moot.

Judgment reversed

and cause remanded.

COONEY and GALLAGHER, JJ., concur.

_____

APPENDIX

Assignment of Error I

{¶ 16} "The trial court committed reversible error in failing to have the defendant-appellant enter a valid plea, in violation of the United States and Ohio constitutions and Ohio Criminal Rule 11."

Assignment of Error II

{¶ 17} "Defendant-appellant did not knowingly and voluntarily waive its constitutional rights with full knowledge of the maximum penalty included as required by Ohio Criminal Rule 11(C)(2)(a)."

Assignment of Error III

{¶ 18} "The trial court failed to make a finding of guilt based on an explanation of the circumstances of the offense in violation of Ohio Revised Code Section 2937.07."

Assignment of Error IV

{¶ 19} "The trial court failed to advise the defendant-appellant that it had a right to confront witnesses against it."

Assignment of Error V

{¶ 20} "The total fine of $10,948,000.00 is excessive, unrelated, and grossly disproportionate to the offenses to which defendant-appellant pled no contest, and constitutes an excessive fine in violation of the defendant-appellant's rights as guaranteed by the Eighth Amendment to the United States Constitution and Section 9 Article 1 of the Ohio Constitution."

Assignment of Error VI

{¶ 21} "The defendant-appellant's numerous/multiple convictions for building and housing code violations involved allied offenses of similar import, thus precluding the trial court's imposition of multiple sentences."