[Cite as *State v. Zarconi*, 2013-Ohio-891.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | CASE NO.    11 MA 207 |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | O P I N I O N |
| | ) | |
| LAURA ZARCONI, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |


CHARACTER OF PROCEEDINGS:    Criminal Appeal from Youngstown
                             Municipal Court, Case No. 11CRB1904.


JUDGMENT:    Affirmed in part; Reversed in part.


APPEARANCES:
For Plaintiff-Appellee:    Attorney Dana Lantz
                           Prosecuting Attorney
                           Attorney Kathleen Thompson
                           Assistant Prosecuting Attorney
                           26 South Phelps Street, 4th Floor
                           Youngstown, Ohio  44503

For Defendant-Appellant:    Attorney Ryan Ingram
                            7330 Market Street
                            Youngstown, Ohio  44512


JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Mary DeGenaro


                           Dated:  March 8, 2013

VUKOVICH, J.

{¶1} Defendant-Appellant Laura Zarconi appeals the decision of the Youngstown Municipal Court finding her guilty of violating Youngstown City Ordinance 505.19(b), a first-degree misdemeanor, and ordering her to surrender her dog to the Mahoning County Dog Warden. Two issues are raised in this appeal. The first issue is whether the trial court had the authority to order her to surrender her dog to the Mahoning County Dog Warden. The second issues is whether her no contest plea to Youngstown City Ordinance 505.19 was entered into knowingly, intelligently and voluntarily when the trial court did not advise her of the potential penalties for the crime.

{¶2} For the reasons expressed below, we find no merit with the second issue because there is no requirement in Crim.R. 11 that for petty offenses the defendant must be advised of the potential penalties before a plea can be entered into knowingly, intelligently and voluntarily. However, as to the first issue, we find merit with the argument presented by Zarconi. Youngstown Ordinance 505.19 does not specifically authorize the trial court to order that the dog be impounded. For that reason, we reverse the municipal court's impoundment decision. That said, all other penalties issued by the trial court remain in effect. Therefore, the municipal court's decision is reversed in part and affirmed in part.

## Statement of the Case

{¶3} On September 15, 2011, Zarconi was charged by complaint with two counts of allowing a vicious dog to leave her property without being securely leashed or restrained in violation of Youngstown Ordinance 505.19(b), first-degree misdemeanors, and two counts of failing to confine a dangerous dog in violation of R.C. 955.22(D)(2)/(G)(3), first-degree misdemeanors. Zarconi initially pled not guilty to all four counts in the complaint. However, after reaching a plea agreement with the City, Zarconi changed her plea and pled no contest to one count of allowing a vicious dog to leave her property without being securely leashed or restrained in violation of Youngstown Ordinance 505.19(b), a first degree misdemeanor. The City, in exchange, dismissed the other three counts that were alleged in the complaint.

**{¶4}** Following a plea colloquy, the municipal court accepted her no contest plea and found her guilty of violating Youngstown Ordinance 505.19(b). 10/31/11 J.E.

**{¶5}** At the sentencing hearing the victim appeared and indicated that the dog caused damage to her door, which amounted to $50 worth of damages. 12/21/11 Tr. 7-8. The trial court then sentenced Zarconi to one year of probation and ordered her to pay a $250 fine, $25 for attorney appointment fees, and $50 in restitution. The court also ordered her to pay $100 for reimbursement for the community control supervision, but stated that such requirement would be waived if the sanctions are satisfied. In addition to these orders, the trial court additionally ordered Zarconi to surrender the dog to the Mahoning County Dog Warden the next day. 12/21/11 J.E.; 12/21/11 Tr. 8-9.

**{¶6}** Zarconi timely appealed the decision and filed a motion with the municipal court requesting a stay of execution of the sentence. 12/22/11 Motion and Notice of Appeal. Specifically, in her stay of execution request, she asked that the time period for delivering the dog to the Mahoning County Dog Warden be suspended pending the appeal. The municipal court denied her request. Zarconi then filed a motion for stay with this court. In response to her request, we ordered her to immediately surrender the dog to the Mahoning County Dog Warden, but indicated that the dog was not to be euthanized or adopted during the pendency of appeal. Approximately two weeks later, Zarconi asked this court to modify the stay order and asked us to allow the dog to return to her residence. She attached a letter from the Mahoning County Dog Warden to the motion which stated that the dog was susceptible to disease or depression while impounded and that the dog had not demonstrated aggressive behavior while impounded. We granted her request on the condition that she pay all boarding charges and keep the dog secured at all times when it leaves the house. 02/22/12 J.E.

COURT'S AUTHORITY TO ORDER IMPOUNDMENT
First Assignment of Error

{¶7} "The trial court erred when it ordered the Defendant-Appellant to forfeit her dog to the Mahoning County Dog Warden because such an order is not expressly authorized by Youngstown Municipal Code § 505.19, therefore such an order is beyond the jurisdiction of the court."

{¶8} Zarconi was convicted under Youngstown Ordinance 505.19(b). That code section provides, in pertinent part:

(b) No person owning or harboring or having the care of a vicious dog shall suffer or permit such dog to go beyond the premise of such person unless such dog is securely leashed or otherwise securely restrained.

(c) Definitions

(1) * * *

(2) "Vicious dog" as used in this section means:

A. Any dog with a propensity, tendency or disposition to attack, to cause injury to or to otherwise endanger the safety of human beings or other domestic animals; and

B. Any dog which attacks a human being or another domestic animal without provocation.

* * *

(e) Whoever violates this section is guilty of one of the following:

(1) Misdemeanor One: If the dog causes injury to any person;

(2) Misdemeanor Four: If the dog does not otherwise cause injury to any persons.

(3) When any person is found guilty of a subsequent offense such person is guilty of a misdemeanor of the third degree.

Youngstown Ordinance 505.19.

{¶9} As can be seen, this section indicates that a person found guilty of this section is guilty of a first, third or fourth degree misdemeanor, depending on the circumstances. Trial courts only have authority to impose sentences permitted by the

applicable statutes. *State v. Roach*, 4th Dist. No. 11CA12, 2012-Ohio-1295, ¶ 5. There is no provision in this ordinance that impoundment is an option when there is a violation of the ordinance. Therefore, the clear language of Youngstown Ordinance 505.19 only authorized the trial court to issue penalties consistent with the degree of misdemeanor that Zarconi was found guilty of, which in this case would be a first degree misdemeanor.

{¶10} The city acknowledges that Youngstown Ordinance 505.19 does not specifically authorize impoundment. However, it contends that the court's authority to order impoundment is found in Youngstown Ordinance 505.02. We disagree. The first sentence of this ordinance specifically states, "A **police officer or animal warden** may impound every animal or dog found in violation of Section 505.01, 505.19 or 505.191." Youngstown Ordinance 505.02(a) (Emphasis added). Thus, this section applies to the authority of a police officer or animal warden to impound an animal, not a trial court's authority to issue an impoundment order. We read this section to mean that the police officer or animal warden may impound an animal when the owner is cited for violating any of those three ordinances. Thus, we cannot find that the wording of this ordinance authorizes the trial court to order the impoundment of the animal as a penalty when the owner is found guilty of those sections.

{¶11} Consequently, there is no statute or ordinance that provides impoundment of the canine as a penalty for a first-degree misdemeanor.

{¶12} The fact that there is not a specific authorization for impoundment in Youngstown Ordinance 505.19 means that the trial court was without authority to order the impoundment of the canine. Had the City desired to make impoundment a penalty for violating Youngstown Ordinance 505.19, language to that effect could have been included in the ordinance or Youngstown Ordinance 505.02 as the City did in its enactment of Ordinance 505.191.

{¶13} Youngstown Ordinance 505.191 is titled Prohibition of Pit Bull Terriers and subsection (d), the penalty section, provides:

Whoever violates subsection (b) hereof shall be guilty of a misdemeanor of the first degree. In addition to any other penalty available for a violation of subsection (b) hereof, the "Pit Bull Terrier" that is the subject of the offense(s) shall be impounded and humanely destroyed according to the provisions of Section 505.02 and any person found guilty of violating this section shall pay all expenses, including shelter, food, boarding, or veterinary expenses necessitated by the impounding and humane destruction of the dog. Whoever violates any provision of subsection (c) hereof shall be guilty of a minor misdemeanor. For any subsequent violation of any provision of subsection (c) hereof, the person shall be guilty of a misdemeanor of the first degree. In addition to any other penalty available for a subsequent violation of subsection (c) hereof, the "Pit Bull Terrier" that is subject of the offense(s) shall be impounded and humanely destroyed according to the provisions of Section 505.02 and any person found guilty of violating this Section shall pay all expenses, including shelter, food, boarding, or veterinary expenses necessitated by the impounding and humane destruction of the dog.

Youngstown Ordinance 505.191(d).

{¶14} Youngstown Ordinance 505.191 demonstrates that the City knew how to make impoundment and humane destruction a penalty for violating that section. The City, however, in enacting Youngstown Ordinance 505.19 did not put language in the statute that the trial court is authorized to order the impoundment of an animal for a violation of that section.

{¶15} Admittedly, Youngstown Ordinance 505.191 does specifically reference Youngstown Ordinance 505.02 when authorizing the trial court to order impoundment and humane destruction. By referencing Youngstown Ordinance 505.02 in this manner, Youngstown Ordinance 505.191 is specifically authorizing the trial court to order impoundment and humane destruction when certain qualifications are met. Youngstown Ordinance 505.19, however, does not make reference to Youngstown

Ordinance 505.02 and does not explicitly authorize the trial court to order impoundment.

**{¶16}** Therefore, considering the above Youngstown Ordinance 505.191 clearly demonstrates that the City knew how to make impoundment a penalty, however, when enacting Youngstown Ordinance 505.19, the City did not take the steps necessary for impoundment to be a penalty. Therefore, impoundment is not an option as a penalty for a violation of Youngstown Ordinance 505.19.

**{¶17}** Consequently, for those reasons, this assignment of error has merit. We find that the municipal court was without the authority to order the impoundment of the canine in this situation. Therefore, the impoundment decision must be reversed. However, all other penalties, i.e. probation, fines and costs, issued by the municipal court remain in effect.

<u>VOLUNTARINESS OF THE PLEA</u>

<u>Second Assignment of Error</u>

**{¶18}** "The Defendant-Appellant's no contest plea was not voluntarily entered because at no point during the proceeding was she informed that the forfeiture of her dog was a potential penalty."

**{¶19}** To ensure that pleas are knowingly, intelligently, and voluntarily made, Crim.R. 11 sets forth specific procedural requirements the trial court must follow, depending upon the level of offense to which the defendant is pleading. *State v. Watkins*, 99 Ohio St.3d 12, 2003-Ohio-2419, 788 N.E.2d 635, ¶ 25. Crim.R. 11(C)(2) applies to felony cases only. *Id.* at ¶ 27. Crim.R. 11(D) applies to cases involving "serious offenses," which are "any felony, and any misdemeanor for which the penalty prescribed by law includes confinement for more than six months." Crim.R. 2(C). Finally, Crim.R. 11(E) applies to misdemeanors involving "petty offenses," which are "a misdemeanor other than [a] serious offense." Crim.R. 2(D).

**{¶20}** Zarconi entered a no contest plea to the vicious dog ordinance, a first-degree misdemeanor, subject to a sentence of not more than 180 days, and thus, a petty offense. Youngstown Ordinance 501.99(b)(1); Crim.R. 2(D). Therefore, Crim.R. 11(E) controls.

**{¶21}** The Ohio Supreme Court has clearly indicated that under Crim.R. 11(E), the trial court is only required to inform the defendant of the effect of the specific plea being entered. *State v. Jones*, 116 Ohio St.3d 211, 2007-Ohio-6093, 877 N.E.2d 677, paragraph one of the syllabus. Therefore, in this case, the trial court was only required to inform Zarconi of the effect of her no contest plea. Zarconi does not argue in her appellate brief that the trial court's advisement on the effect of her no contest plea was inadequate. Her only argument is that her plea was not voluntary because the trial court did not inform her of the potential penalties. Thus, her argument fails on the basis that there is no requirement in Crim.R. 11(E) that she be informed of the potential penalties. On that basis alone, this assignment of error lacks merit.

**{¶22}** That said, in the interest of fairness, even if we review the trial court's advisement on the effect of her no contest plea, we still find that this assignment of error lacks merit. Crim. R. 11(B)(2) states that a "plea of no contest is not an admission of defendant's guilt, but is an admission of the truth of the facts alleged in the indictment, information, or complaint, and the plea or admission shall not be used against the defendant in any subsequent civil or criminal proceeding." Crim.R. 11(B).

**{¶23}** Before accepting her no contest plea, the trial court addressed Zarconi as follows:

> THE COURT: I have here Case No. 11 CRB 1904. Per Rule 11 negotiations and agreement the Defendant is withdrawing her previous plea of not guilty to the charge of, under the vicious dog ordinance, which is a misdemeanor of the 1st degree, which has potential penalty of a fine up to $1,000, potential jail sentence up to six months in jail.
>
> Laura Zarconi, I see here you intend to change your plea from not guilty to no contest. I am to inform you that a no contest plea stipulates that the Court may make a finding of guilty or not guilty based on the facts presented or a stipulation and that the probabilities are that you will be found guilty. Given that information and understanding you are changing your plea to?

MISS ZARCONI: No contest.

THE COURT: Very well. Further, a no contest plea waives certain legal rights, your right to a trial, a jury trial, to confront your accuser, ask questions and cross examine any and all witnesses the State would bring forward to testify against you at a trial, your right to subpoena witnesses who would come and testify on your behalf, remain silent, raise any and all defenses you may have, testify at your own trial among other Constitutional and statutory rights. Do you understand that you would be waiving those rights?

MISS ZARCONI: Yes, I do.

10/31/11 Tr. 3.

**{¶24}** In this plea colloquy, the trial court failed to expressly notify Zarconi that a no contest plea means an admission of the truth of the facts alleged in the complaint. Further, the trial court did not inform her that the plea or admission shall not be used against her in any subsequent civil or criminal proceeding. *See State v. Hough*, 7th Dist. No. 10MA178, 2011-Ohio-6425, ¶ 16-27 (trial court engaged in very similar plea colloquy, which did not inform defendant of the effect of the no contest plea). Moreover this information was not contained in the written plea agreement.

**{¶25}** That said, in order to vacate a plea for failure to inform the defendant of the plea's effect, there must be prejudice, which means the plea otherwise would not have been entered. *Jones*, 116 Ohio St.3d 211, 2007-Ohio-6093, 877 N.E.2d 677, at ¶ 52. *See also State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 15. Here, Zarconi has not alleged that any prejudice resulted from the trial court's failure to explain the effect of her no contest plea. Likewise, the record does not indicate that the facts of this case were in dispute or that Zarconi would not have pled no contest had the court explained that "no contest" meant admitting to the truth of the facts in the complaint rather than admitting guilt. Thus, Zarconi was not prejudiced and the trial court's failure to comply with Crim.R. 11(E) does not require reversal. See *Hough* at ¶ 28; *State v. McGilton*, 7th Dist. No. 07BE9, 2008-Ohio-1185, ¶ 28.

**{¶26}** Therefore, for all the above stated reasons, this assignment of error lacks merit.

Conclusion

**{¶27}** In conclusion, on the basis of the first assignment of error, the municipal court's impoundment decision is reversed in part and affirmed in part. Youngstown Ordinance 505.19 does not specifically authorize the trial court to order that the dog to be impounded. That said, all other penalties issued by the trial court remain in effect.

Donofrio, J., concurs.
DeGenaro, P.J., concurs in part; dissents in part; see concurring in part; dissenting in part Opinion.


DeGenaro, P.J., concurring in part and dissenting in part.

While I concur with the majority's resolution of the second assigned error regarding Zarconi's plea, I dissent from the resolution of the first assigned error. The trial court had authority to order that Zarconi surrender her dog due to a judicially determined violation of the vicious dog ordinance. Accordingly, the judgment of the trial court should be affirmed in its entirety.

The majority and I differ on how to interpret what the Fourth District in *Roach* meant by the provision "applicable statutes" when reviewing a trial court's sentencing authority. Consistent with the historically broad discretion vested with trial courts in this country and Ohio for sentencing purposes, Youngstown Ordinance 505.02(a) is an applicable statute and thus its impoundment provision a penalty within the trial court's authority to order here. Zarconi pled no contest to permitting a vicious dog to leave her premise unrestrained in violation of Youngstown Ordinance 505.19; thus she admitted those facts, and the trial court convicted her accordingly. Reading the applicable ordinances in pari materia, the trial court was within its discretion to order impoundment. Moreover, a plain reading of Youngstown Ordinance 505.02

expressly provides that the owner of a vicious dog may not redeem the subject animal.

Youngstown Ordinance 505.02(a) provides in pertinent part:

A police officer or animal warden *may impound every animal or dog found in violation of Section 505.01, 505.19* or 505.191. * * * Any dog seized and impounded, *other than a vicious dog as defined in Section 505.19* or a "non-exempt Pit Bull Terrier" as defined in Section 505.191, may be redeemed by its owner, keeper or harborer at any time prior to the applicable redemption period upon payment of all lawful costs assessed against the animal and upon providing the dog with a valid registration tag if it has none.

Youngstown Ordinance 505.191(b) provides: "No person shall own, keep, harbor or possess a "Pit Bull Terrier" within the municipal limits of the City of Youngstown." Ownership of a Pit Bull, whether or not a particular dog's temperament is that of a 'vicious dog' as defined in Youngstown Ordinance 505.19(c)(2), is a per se violation of the ordinance. Thus, Youngstown Ordinance 505.191 is a strict liability ordinance. Conversely, Youngstown Ordinance 505.19 is not; for all other breeds it requires proof that a particular animal has either the propensity to attack a person/another domestic animal, or in fact has attacked a person/another domestic animal without provocation, as defined in sub-part (c)(2), before an owner is found to have violated Youngstown Ordinance 505.19.

The circumstances under which a dog is usually impounded involve the police or animal warden either seeing or receiving a call of a dog running loose. Thus, Youngstown Ordinance 505.02 vests a police officer or animal warden with the *discretion* to impound a particular dog found running loose, and then provides for notice to the owner where the dogl is wearing a registration tag and a process for the owner to redeem the dog. Obviously this fact pattern involves impounding a dog

*prior* to identifying the owner and/or a judicial finding that an owner has, in fact, let a vicious dog run loose in violation of Youngstown Ordinance 505.19. It is appropriate under these circumstances, before any legal proceedings are commenced against the owner, that the police and animal warden are given the discretion concerning impoundment of a particular dog.

It follows that the automatic nature of the penalty is also different based upon the breed of the dog. Youngstown Ordinance 505.191, the per se Pit Bull prohibition, in sub-part (d) specifically provides that the subject dog of an offense under this ordinance "shall be impounded and humanely destroyed according to the provisions of Section 505.02 * * *." Conversely, Youngstown Ordinance 505.02 does not impose an *automatic destruction* penalty for alleged violations of Youngstown Ordinance 505.19 involving other breeds of dogs. Where the owner has been charged with violating this ordinance, first a two-fold judicial determination must be made; specifically, that the subject dog's temperament is vicious as defined by the ordinance, and that the owner failed to keep the dog on their property or otherwise restrained. Only then does the penalty of 505.02 become applicable, namely barring the owner from redeeming the dog from impoundment.

The City of Youngstown has made two valid public policy determinations to ensure public safety. First, that all Pit Bulls are vicious dogs per se as that term is defined in the companion ordinance, irrespective of a particular Pit Bull's temperament. Second, as to all other dog breeds, whether or not a particular dog is a vicious dog must be judicial determined. This affords the owner of an alleged vicious dog notice and due process to defend an alleged violation of the ordinance. This ordinance scheme balances the City's interest in maintaining public safety with preserving a dog owner's due process rights. .

To further ensure public safety, the City gave police and the animal warden the discretion to immediately impound a dog running loose, based upon the mere *presumption* that the dog was vicious and the owner in violation of the ordinance. To give the ordinance meaningful effect, it must be construed to give trial judges the same discretion to order an owner *convicted* of violating the ordinance to turn over a

dog judicially determined to be vicious. It would undercut the purpose and effect of the ordinances to give a trial court less authority to impose a penalty on an owner than that given the police or animal warden, especially considering that the police and animal warden can exercise that authority with much less due process afforded to the owner.

During the sentencing hearing defense counsel informed the court that the incident occurred because the dog was chained on that day but had broken loose; moreover, he did not believe the dog had a prior history of violence. Defense counsel further stated that the dog caused damage to a neighbor's screen door. Katherine Peoples, the owner of the damaged door, also gave a statement: "[S]ince that incident happened the dog has still been outside. [Zarconi] does keep the dog on a leash but the other family members don't. And we just want her to keep control of their dog because this dog is like this big, literally. And there is a lot of kids and they are not being cautious about their dog * * *."

Youngstown Ordinance 505.02 permits impounding a dog without prior notice to the owner where the dog has been found roaming free, let alone before any judicial determination that the owner has violated the ordinance. Moreover, Youngstown Ordinance 505.02 prohibits an owner from redeeming a dog found to be a vicious dog under Youngstown Ordinance 505.19. Zarconi's no contest plea is an admission to the facts supporting a violation of the vicious dog ordinance, and the trial court convicted her of that offense. As a matter of law, she was precluded from redeeming her dog. Because the trial court found Zarconi guilty of the vicious dog ordinance, her dog was subject to impoundment, and the trial court had the authority to order that she surrender her dog to the dog warden. Accordingly, the judgment of the trial court should be affirmed.