[Cite as *Parma v. Benedict*, 2013-Ohio-1990.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 98947

## CITY OF PARMA

PLAINTIFF-APPELLEE

vs.

## KEVIN BENEDICT

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Parma Municipal Court
Case No. 11-TRC-15381

**BEFORE:** Celebrezze, J., Boyle, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** May 16, 2013

**ATTORNEYS FOR APPELLANT**

Joseph C. Patituce
Megan M. Patituce
Jennifer Scott
Patituce & Scott, L.L.C.
26777 Lorain Road
Suite 708
North Olmsted, Ohio   44070


**ATTORNEYS FOR APPELLEE**

Timothy G. Dobeck
Law Director and Chief Prosecutor
City of Parma
By:     John J. Spellacy
Assistant Prosecutor
5555 Powers Boulevard
Parma, Ohio   44129

FRANK D. CELEBREZZE, JR., J.:

**{¶1}** Appellant, Kevin Benedict, appeals from his conviction in the Parma Municipal Court for operating a vehicle while intoxicated ("OVI"). He argues that the trial court impermissibly applied provisions of the law that had changed from the time of his criminal conduct to the time of his sentence. He also argues he received ineffective assistance of counsel. After a thorough review of the record and law, we affirm appellant's conviction and sentence.

## I. Factual and Procedural History

**{¶2}** On December 24, 2011, at approximately 12:53 a.m., appellant was issued two citations following a traffic accident that resulted in property damage. Appellant's blood was drawn that night in order to test his blood alcohol level. On December 27, 2011, appellant was charged in the Parma Municipal Court with violations of Parma Codified Ordinances ("PCO") 333.01(a)(1) (OVI) and 333.02 (reckless operation). An automatic license suspension ("ALS") was imposed on February 9, 2012.

**{¶3}** After several pretrials, appellant changed his plea on July 30, 2012, from not guilty to no contest on one count of OVI in violation of PCO 333.01(A)(1). The other count was dismissed. During this hearing, the trial court reviewed appellant's rights that were being waived by entering such a plea, and he was also advised that his driver's license could be suspended. Appellant's attorney also informed the court that appellant was a commercial truck driver and held a commercial driver's license ("CDL"). Counsel asked the court to vacate its earlier ALS suspension so that appellant's CDL could

hopefully be reinstated. The trial court imposed a sentence of 180 days in jail with 177 suspended, a $1,000 fine with $600 suspended, ordered appellant to attend a "five session MADD Seminar," imposed 12 months of probation, imposed costs, and suspended appellant's driver's license for six months beginning December 24, 2011. The court also vacated appellant's ALS in a nunc pro tunc entry. Although not in the lower court record, appellant claims his CDL was suspended. Appellant perfected this appeal arguing three errors:

> I. The Trial Court erred when it failed to sentence [appellant] pursuant to the law in effect at the time of [his] arrest.

> II. The Trial Court erred when it failed to comply with Criminal Rule 11 by failing to advise [appellant] that a conviction would result in the suspension of his commercial driver's license.

> III. [Appellant] was deprived of effective assistance of counsel when his attorney failed to advise [him] that [his] commercial driver's license would be subject to suspension.

## II. Law and Analysis

### A. Commercial Driver's License Suspension

{¶4} Appellant's first assignment of error complains that the trial court did not sentence him under the law that existed at the time of his criminal violation. He claims the trial court applied sentencing law that was amended with an effective date of January 27, 2012. *See* 2012 H.B. No. 337. However, the commercial driver's license suspension that is the subject of this complaint was not imposed by the trial court. The license suspension imposed by the trial court was pursuant to R.C. 4511.19(G)(1)(a)(iv) for six months dating back to the time of appellant's arrest. The suspension appellant complains of in this assignment of error is based on R.C. 4506.16 and was imposed by the

registrar of motor vehicles for a period of one year. R.C. 4506.16 was amended to provide for CDL suspension on conviction of a municipal OVI offense. R.C. 4506.16(E).[1] R.C. 4506.16(D) is directed to the registrar of motor vehicles, not to any criminal court. This is not a direct criminal penalty imposed on an individual found guilty of an OVI offense, but a collateral civil license suspension that results from such a conviction. The statute giving the trial court authority to impose a six-month license suspension, R.C. 4511.19(G)(1)(a)(iv), did not change from the time of appellant's conduct to the date of sentencing. Therefore, the trial court could not have erred as appellant alleges.

{¶5} Appellant's first assignment of error is therefore overruled.

### B. Crim.R. 11 Plea Colloquy

{¶6} Appellant next argues that the trial court did not fully comply with Crim.R. 11 when the court did not advise him that the OVI conviction would result in a mandatory suspension of his CDL for one year.

{¶7} "A trial court's obligations in accepting a plea depend upon the level of offense to which the defendant is pleading." *State v. Jones*, 116 Ohio St.3d 211, 2007-Ohio-6093, 877 N.E.2d 677, ¶ 6, citing *State v. Watkins*, 99 Ohio St.3d 12, 2003-Ohio-2419, 788 N.E.2d 635, ¶ 25. Appellant was convicted of a petty misdemeanor because PCO 333.01(a)(1) is a first-degree misdemeanor punishable by no

---

[1] The trial court vacated the automatic license suspension that was imposed prior to trial and reported to the state bureau of motor vehicles. Appellant's trial counsel brought up the ALS at sentencing explaining that R.C. 4511.191 may provide for CDL suspension when an ALS has been imposed. The court issued a nunc pro tunc entry vacating the ALS.

more than six months in jail. Crim.R. 2(D); PCO 333.01(h)(1)(A); R.C. 4511.19(G)(1)(a). Therefore, Crim.R. 11(E) governs the extent of the colloquy necessary in order to accept a no-contest plea. According to Crim.R. 11(E), "the court may refuse to accept a plea of guilty or no contest, and shall not accept such plea without first informing the defendant of the effect of the pleas of guilty, no contest, and not guilty."

{¶8} "[I]f trial courts fail to comply with Crim.R. 11, 'courts must engage in a multitiered analysis to determine whether the trial judge failed to explain the defendant's constitutional or nonconstitutional rights and, if there was a failure, to determine the significance of the failure and the appropriate remedy.'" *E. Cleveland v. Zapo*, 8th Dist. No. 96718, 2011-Ohio-6757, ¶ 5, quoting *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 30.

{¶9} The Ohio Supreme Court has addressed Crim.R. 11(E) and the "effects of the plea" language and determined that this language does not include the maximum penalty involved. *Jones*, 116 Ohio St.3d 211, 2007-Ohio-6093, 877 N.E.2d 677, ¶ 22. The court held, "for a no contest plea, a defendant must be informed that the plea of no contest is not an admission of guilt but is an admission of the truth of the facts alleged in the complaint, and that the plea or admission shall not be used against the defendant in any subsequent civil or criminal proceeding." This satisfied the trial court's obligation under Crim.R. 11(E) to accept a no-contest plea.

{¶10} This court recently issued an opinion that held, even for petty misdemeanor offenses, a trial court must comply with Crim.R. 11(C) and have a full colloquy with the

defendant as set forth for felony offenses before accepting a plea. *State v. Hughes*, 8th Dist. No. 98666, 2013-Ohio-1037. This is the preferred procedure, but not one mandated by statute.

{¶11} *Hughes* relies on a 1998 Eighth District case, *Cleveland v. Wanzo*, 129 Ohio App.3d 664, 718 N.E.2d 982 (8th Dist.1998). In *Wanzo*, this court required a plea colloquy substantially complying with Crim.R. 11(C) even though the offenses were misdemeanors and the plea was governed by Crim.R. 11(E). The Ohio Supreme Court recognized a conflict between *Wanzo* and *Toledo v. Chiaverini*, 11 Ohio App.3d 43, 463 N.E.2d 56 (6th Dist.1983), with the decision in *State v. Watkins*, 2d Dist. No. 2001 CA 15, 2001-Ohio-1841. *State v. Watkins*, 94 Ohio St.3d 1491, 763 N.E.2d 1187 (2002). The Ohio Supreme Court took up the certified question:

> Where a defendant charged with a petty offense changes his plea of not guilty to a plea of guilty or no contest, does the trial court comply with Traf.R. 10(D) and Crim.R. 11(E) by informing the Defendant of the information contained in Traf.R. 10(B) or Crim.R. 11(B) or must the trial court engage in a colloquy with the defendant that is substantially equivalent to that required by Crim.R. 11(C) in felony cases?

*State v. Watkins*, 99 Ohio St.3d 12, 2003-Ohio-2419, 788 N.E.2d 635, ¶ 9. The court answered the question in the negative. It determined that Crim.R. 11(C) requirements should not be read into Crim.R. 11(E). *Id.* at ¶ 27.

{¶12} The Supreme Court further clarified the trial court's duties under Crim.R. 11(E). *Jones,* 116 Ohio St.3d 211, 2007-Ohio-6093, 877 N.E.2d 677. It held, "to satisfy the requirement of informing a defendant of the effect of a plea, a trial court must inform the defendant of the appropriate language under Crim.R. 11(B)." *Id.* at ¶ 25.

**{¶13}** There is no requirement under Crim.R. 11(E), as there is under Crim.R. 11(C)(2)(a), that the trial court explain the maximum penalty. This court has previously arrived at this conclusion. We rejected a similar argument to the one made here, finding an appellant's "assertion that the trial court was required to engage in a colloquy and advise him in open court of the constitutional rights he was waiving by entering his no contest plea is without merit. A Crim.R. 11(B)(2) advisement in writing would have been adequate." *Solon v. Bollin-Booth*, 8th Dist. No. 97099, 2012-Ohio-815, ¶ 18. *See also Cleveland v. Interstate Invest. Group*, 194 Ohio App.3d 833, 2011-Ohio-3384, 958 N.E.2d 590, ¶ 13 (8th Dist.) ("the trial court need not inform the defendant of the maximum sentence and the right to a jury trial to satisfy [Crim.R. 11(E)]"). The Seventh and Ninth Districts share this view. *State v. Zarconi*, 7th Dist. No. 11 MA 207, 2013-Ohio-891, ¶ 21 ("Thus, her argument fails on the basis that there is no requirement in Crim.R. 11(E) that she be informed of the potential penalties"); *State v. Klingsbergs*, 9th Dist. No. 10CA0044, 2011-Ohio-6509, ¶ 9 ("'[u]nder Criminal Rule 11(E), the municipal court was not required to tell [the defendant] about the potential penalties he faced * * * before accepting his no-contest plea'").

**{¶14}** Here, the trial court advised appellant, "[d]o you understand that the plea of no contest is not an admission of your guilt but it is an admission of the truth of the facts alleged in the complaint. Your plea cannot be used against you at any subsequent civil or criminal proceeding; do you understand that?" Appellant responded, "Yes."

**{¶15}** This advisement is the same as that provided in Crim.R. 11(B)(2). Therefore, the trial court strictly complied with Crim.R. 11(E) when accepting appellant's

no-contest plea. The court was not required to explain the possible penalties, let alone a collateral license suspension imposed by the bureau of motor vehicles. Therefore, this assignment of error is overruled.

## C. Ineffective Assistance of Counsel

{¶16} Finally, appellant argues that his trial counsel was constitutionally ineffective because counsel failed to advise him of the mandatory nature of the administrative suspension that would be imposed by the Ohio Bureau of Motor Vehicles.

{¶17} To prevail on a claim of ineffective assistance of counsel, one must show that counsel's performance was deficient and that he was prejudiced by that deficiency. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Williams*, 99 Ohio St.3d 493, 2003-Ohio-4396, 794 N.E.2d 27, ¶ 107. "Deficient performance" means performance falling below an objective standard of reasonable representation. "Prejudice," in this context, means a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland* at 687-688, 694. Further, the Supreme Court has set forth that an appellant must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *Missouri v. Frye*, ___ U.S. ___, 132 S.Ct. 1399, 182 L.Ed.2d 379, paragraph three of the syllabus.

{¶18} Appellant's entire argument in his brief consists of the following:

In the present case counsel was aware that [appellant] possessed a commercial driver's license. Counsel was aware that there might be an issue wherein the amendment to R.C. 4506.16 might impact [him]. However, counsel was not aware of how [appellant] might be impacted,

was not aware if [appellant's] commercial driver's license would be revoked. The trial court proceeded as described above and as a result of counsel's failure to discover the answer, [appellant] was grievously prejudiced by counsel's failure.

{¶19} Trial counsel should inform clients of the consequences that might befall them based on a criminal conviction. In cases involving adverse immigration consequences, which are required to be disclosed, the Supreme Court has cautioned that inaccurate advice about such consequences can lead to withdrawal of a guilty plea where prejudice has been shown. *Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), at the syllabus. The court recognized that deportation is not a criminal penalty, but is "a particularly severe 'penalty,'" and dispensed with segregating direct and collateral consequences of a plea in the immigration context because the "penalty" was so closely tied with the criminal process. *Id*. at 1481. As the court explained, several other courts have held that a constitutional right to counsel existed only to direct consequences of a plea, i.e. those matters within the sentencing authority of the state trial court. *Id.* at 1481.

{¶20} Here, appellant was informed that his driver's license would be suspended from six months to three years. The one-year suspension imposed by the registrar of motor vehicles was within this period. Appellant complains he was not informed of the mandatory nature of the suspension of his CDL for one year under R.C. 4506.16. A commercial driver's license suspension is a civil, collateral consequence that is of the type courts have excluded as the basis of ineffective assistance claims. *Padilla* at 1488 (Alito, J., concurring). *Padilla* does nothing to aid appellant because immigration consequences are dire and can be the most severe sanction that befalls a criminal

defendant subject to virtually automatic deportation. A one-year license suspension is not of the same kind or degree.

{¶21} Further, where consequences are unclear, trial counsel's obligation was only to advise appellant of the possible risk of CDL suspension. *Padilla* at 1483 ("a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences"). It is apparent in the record that counsel did this. It is clear that appellant was aware of the possibility that suspension of his CDL could result from his conviction based on the discussion trial counsel had with the court about the ALS and from the court's advisement that appellant's license could be suspended for up to three years. Therefore, trial counsel was not constitutionally ineffective.

### III. Conclusion

{¶22} The trial court properly sentenced appellant. The law that changed in the interim between appellant's criminal conduct and his sentence was not a sentencing statute, but a civil, administrative statute affecting a commercial driver's license. The trial court did not impose sentence under this newly amended statute and, therefore, could not have committed the error of which appellant complains. The trial court also did not fail to fulfill its duties under Crim.R. 11 in accepting appellant's plea because the trial court was under no obligation to inform appellant of possible collateral consequences of a commercial driver's license suspension that may result from his guilty plea. In fact, the trial court had no obligation to discuss the maximum penalty under Crim.R. 11(E). Finally, appellant's counsel was not constitutionally ineffective based on a failure to

inform appellant of the collateral civil consequences of his plea. Even if that were included in trial counsel's obligations, appellant was made aware of the potential for a driver's license suspension by counsel and the trial court.

{¶23} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Parma Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., JUDGE

MARY J. BOYLE, P.J., and
SEAN C. GALLAGHER, J., CONCUR